## Commonwealth v. Penman

*George O. Wagner*, district attorney, for Commonwealth.

*J. Mettler Pensyl*, for defendant.

HERRING, P. J., September 14, 1939.—This is an appeal by defendant from the judgment of Austin H. Klase, a justice of the peace in the Borough of Danville, Montour County, Pa.

Immediately before the hearing in this case, counsel for defendant made a motion to "dismiss the information" for the reason that it must appear affirmatively from the record of the justice that he has jurisdiction of the case. This motion was overruled or denied, and the case proceeded to a hearing on the merits.

From the testimony, it seems that defendant was operating a motor vehicle in Mahoning Township, Montour County, Pa., on the Washington-Danville Road, on April 9, 1939, at about 9:30 p.m., proceeding southwardly toward Danville on said road; that defendant was observed by the prosecutor passing through Mausdale at a fast rate of speed, and this section of highway was being patrolled on this date by J. P. Clark, a motor policeman, and he followed defendant for about one half mile, or until he got within checking distance, and then clocked or timed defendant's car another half mile, and the speed of defendant, as shown by the speedometer on the car of the prosecutor, for the half mile that he was clocked or checked, was 65 miles per hour. Motor Policeman J. P. Clark, who is prosecutor in this case, caught up with defendant in the Borough of Danville.

J. P. Clark testified that the speedometer on his car was checked for accuracy on March 31, 1939.

It was admitted at the hearing that there is no justice of the peace in Mahoning Township and that the Borough of Danville adjoins Mahoning Township.

Defendant testified that he was not traveling at a speed greater than 48 or 49 miles per hour; that he had installed or attached to his automobile an indicator that shows red when he attains a speed of 50 miles per hour; that at no time during that evening did his indicator show red. Defendant further testified that he did not look at his speedometer, as his dashlight was out, but relied on this indicator as to his rate of speed. Defendant could not give the date when his speedometer was tested, but testified that the indicator was working on this date. Defendant also denied that he had said to J. P. Clark, the prosecutor, that the indicator was not functioning; but that he did say to the prosecutor that the indicator had not shown red or blinked red.

Stanley Ponatoski and Mary Boone, two witnesses for defendant, testified that they were in the car operated by defendant all the distance or all the way from Maus-

dale to Danville, and during this time the indicator on the car operated by defendant did not blink red or show red.

Section 1002 of The Vehicle Code of May 1, 1929, P. L. 905, as amended by section 2 of the Act of June 5, 1937, P. L. 1718, reads as follows:

"Section 2. That subsections (b) and (d) of section one thousand and two of said act, as last amended by section twenty-nine of the act, approved the sixteenth day of July, nineteen hundred and thirty-five (Pamphlet Laws, one thousand and fifty-six), are hereby further amended to read as follows:

"Section 1002. Restrictions as to Speed. . . .

"(b) 5. Fifty (50) miles an hour speed limit:

"All vehicles, except those otherwise restricted by this act to lower maximum speeds.

"(d) When the rate of speed of any vehicle is timed on any highway within a business or residence district, where official speed limit signs are erected, as provided in this section, for the purpose of ascertaining whether or not the operator of such vehicle is violating a speed provision of this act, such time shall be taken by not less than two (2) peace officers, one of whom shall have been stationed at each end of a measured stretch, and no conviction shall be had upon the unsupported evidence of one (1) peace officer, except as hereinafter provided, and no such measured stretch shall be less than one-eight (⅛) of a mile in length. Under all other conditions, the rate of speed shall be timed, for a distance of not less than one-quarter (¼) mile, by a peace officer using a motor vehicle equipped with a speedometer tested for accuracy within a period of thirty (30) days prior to the alleged violation."

The Commonwealth failed to show what person tested as to accuracy the speedometer on the car operated by the motor police, and show by the party making the test what the results were of the test, and what method was adopted for making the test.

The Vehicle Code, supra, provides that the speedometer used on the car of the motor police shall have been tested for accuracy within 30 days preceding the alleged violation.

There are no presumptions in the case, and we are to determine if the test in this case as to accuracy is sufficient.

In Murphy's Appeal, 34 D. & C. 360, 364, the court said:

"James L. Armstrong, an employe of the firm where the speedometer used by the officer was tested on March 12, 1938, states that the duties of his employment were to repair, amongst other things, speedometers, and that in his employment he has been occupied for about two years in testing the accuracy of speedometers. His experience, he stated, was gained in testing from 25 to 100 speedometers each month. He described the apparatus used as consisting of two speedometers, motor driven, one of them for automobile speedometers and the other for motorcycles, set up together. The cable of the speedometer to be tested is disconnected from the car and the cable from this apparatus connected therewith. He states that this is the usual method of testing the accuracy of speedometers and that no other is known to him. The apparatus itself is made by the North East Electric Company of Buffalo or Rochester, New York, and is called a 'Speedometer Tester'. Finally, the witness states that as a result of the test thus used he found the speedometer in question pretty accurate, the test having been made at 40, 50, and 60 miles per hour. We are impelled to find that the test thus made is a sufficient compliance with the provisions of The Vehicle Code, supra, to permit readings from such speedometer to be offered in evidence."

Also see Haskell's Appeal, 34 D. & C. 406, and Commonwealth v. Haas, 33 D. & C. 143.

In the case at bar defendant operator does challenge the accuracy of the speedometer used by the officer by

stating he (defendant) had an indicator on his car that turned red or flashed red when he reached 50 miles per hour, and on this occasion it did not turn red or flash red.

It is true in the Murphy case and Haskell case, supra, and in the Haas case, supra, it was not a summary conviction; but rather an action of a civil nature, as to suspension of an operator's license.

In the case at bar, it does seem to us that the burden was on the Commonwealth to show by competent evidence that the speedometer on the car operated by the motor police on this occasion was tested for accuracy within the period set out in The Vehicle Code, especially since defendant challenged its accuracy.

Now, September 14, 1939, we adjudge defendant, John Penman, not guilty and he is discharged, and if the fine and costs have been paid by defendant, restitution of such fine and costs shall be made to defendant. This action was brought in good faith by the prosecutor.